# EXHIBIT B



**ARCH INSURANCE COMPANY**
(A Missouri Corporation)

Home Office Address:
2345 Grand Blvd., Suite 900
Kansas City, MO  64108

Administrative Address:
300 Plaza Three, 3rd Floor
Jersey City, NJ  07311
Tel: 1-866-413-5550

## ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY INSURANCE CLAIMS MADE AND REPORTED POLICY

THIS POLICY PROVIDES CLAIMS MADE AND REPORTED COVERAGE. CLAIMS MUST FIRST BE MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND MUST BE REPORTED IN WRITING TO THE INSURER DURING THE POLICY PERIOD OR THE EXTENDED CLAIMS REPORTING PERIOD, IF EXERCISED. THE LIMIT OF LIABILITY SHALL BE REDUCED, AND MAY BE EXHAUSTED, BY DEFENSE COSTS PAYMENTS.  IF THE LIMIT OF LIABILITY IS EXHAUSTED, THE INSURER SHALL HAVE NO FURTHER LIABILITY UNDER THIS POLICY, INCLUDING LIABILITY FOR DEFENSE COSTS.

## DECLARATIONS

Policy No.:     PAAEP0010600                    Renewal of:  New

Item 1.   **Named Insured:**          Juliano Associates, LLC
Item 2.   **Named Insured Address:**  405 Main Street
                                      Yalesville, CT 06492

Item 3.   **Policy Period:**    **Inception Date:  02/13/16     Expiration Date:  02/13/17**
                                (12:01 A.M. local time at the address stated in Item 2.)
Item 4.   **Limits of Liability:**
          A.   Each **Claim**, inclusive of **Claims Expenses**                        $1,000,000
          B.   Aggregate for all **Claims**, inclusive of **Claims Expenses**          $2,000,000

Item 5.   **Deductible**
          Each **Claim**, inclusive of **Claims Expenses**                             $10,000

Item 6.   **Policy Premium:**                                                          $6,877
          100% for the **Policy Period** plus taxes as applicable

**Item 7.**   **Retroactive Date:**
      **A.**    Insuring Agreements A, B, C, D, E and F           02/13/06
      **B.**    In respect of Insuring Agreement G           02/13/06

**Item 8.**   **Insurer:**

<u>All Claims and Potential Claims Notices</u>:

Arch Insurance Company
Professional Liability – Darien Managed Claims
1299 Farnam Street, Suite 500
Omaha, NE  68102
P.O. Box 542033
Omaha, NE 68154
Phone 877 688-ARCH (2724)
FAX 866 266-3630
Email Claims@Archinsurance.com

**Item 9.**   **Endorsements:**
See attached schedule of endorsements and notices.

**Item 10.**   **Insurer's Representative:**

<u>All Notices Except Claims and Potential Claims</u>:

Professional Underwriters Agency, Inc.,
A Division of NSM Insurance Group
2803 Butterfield Road, Suite 260
Oak Brook, IL 60523
Phone: (630) 572-0600
Fax: (630) 572-0615
notices@puainc.com

Policy Number:  PAAEP0010600

**SCHEDULE OF FORMS AND ENDORSEMENTS**

## ARCH INSURANCE COMPANY

Named Insured: Juliano Associates, LLC

Agent Name: NSM Insurance Group – PUA

Effective Date: February 13, 2016
12:01 AM Standard Time
Agent No.  NE001

| Form # | Edition Date | Name |
|---|---|---|
| 05 AEP0054 00 | 08/14 | Policy Declarations |
| 05 AEP0055 00 | 05/15 | Architects and Engineers Professional Liability |
| 05 ML0002  00 | 12/14 | Signature Page |
| 05 ML0014  00 | 03/03 | Claims Handling Procedures |
| 00 ML0065  00 | 06/07 | "OFAC" Advisory Notice to Policyholders |
| 00 AEP0077 07 | 03/15 | Connecticut Amendatory Endorsement |
| 00 AEP0072 00 | 01/15 | Reliance Upon Other Carrier's Application |

# ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY INSURANCE

Please review this Policy carefully with your insurance agent, broker or representative.

In consideration of the payment of the premium, the **Insurer** specified in the Declarations (the **"Insurer"**) and the **Insureds** agree as follows:

1. **INSURING AGREEMENTS**

   A. **PROFESSIONAL LIABILITY**

   The **Insurer** shall pay on behalf of the **Insured** all **Damages** and **Claims Expenses** by reason of a **Claim** first made against the **Insured** arising out of any negligent act, error or omission in rendering or failing to render **Professional Services** by the **Insured** or by any person for whose negligent act, error or omission the **Insured** is legally responsible, except as excluded or limited by the terms, conditions and exclusions of this Policy and first takes place, on or after the applicable Retroactive Date stated in Item 7. of the Declarations.

   B. **ENVIRONMENTAL LEGAL LIABILITY**

   The **Insurer** shall pay on behalf of the **Insured** all **Damages** and **Claims Expenses** by reason of a **Claim** first made against the **Insured** as a result of **Pollution** arising out of any negligent act, error or omission in rendering or failing to render **Professional Services** by the **Insured** or any person for whose negligent act, error or omission the **Insured** is legally responsible, except as excluded or limited by the terms, conditions and exclusions of this Policy.  Such **Professional Services** must first take place, on or after the applicable Retroactive Date stated in Item 7. of the Declarations.

   C. **CONTRACTORS POLLUTION LIABILITY**

   The **Insurer** shall pay on behalf of the **Insured** all **Damages** and **Claims Expenses** by reason of a **Claim** first made against the **Insured** as a result of **Pollution** arising out of the performance of **Contracting Services** by the **Insured** or any person for whom the **Insured** is legally responsible, except as excluded or limited by the terms, conditions and exclusions of this Policy.  Such **Contracting Services** must first take place, on or after the applicable Retroactive Date stated in Item 7. of the Declarations.

   D. **TECHNOLOGY SERVICES LIABILITY AND TECHNOLOGY PRODUCTS**

   The **Insurer** shall pay on behalf of the **Insured** all **Damages** and **Claims Expenses** by reason of a **Claim** first made against the **Insured** arising out of any negligent act, error or omission, or any breach of contract by the **Insured** or any person for whose negligent act, error or omission or breach of contract the **Insured** is legally responsible:

   1. in rendering or failing to render **Technology Services; or**

   2. in the failure of **Technology Products** to perform the function or serve the purpose intended;

   except as excluded or limited by the terms, conditions and exclusions of this Policy and first takes place, on or after the applicable Retroactive Date stated in Item 7. of the Declarations.

**E.    COMPUTER NETWORK SECURITY**

The **Insurer** shall pay on behalf of the **Insured** all **Damages** and **Claims Expenses** by reason of a **Claim** first made against the **Insured** arising out of any act, error or omission in the course of providing or managing **Computer Systems** security by the **Insured** or any person for whose negligent act, error or omission the **Insured** is legally responsible that results in:

1.    the inability of a third party, who is authorized to do so, to gain access to **Computer Systems** or your **Technology Services** and first takes place, on or after the applicable Retroactive Date stated in Item 6 of the Declarations;

2.    the failure to prevent **Unauthorized Access** to **Computer Systems** that first takes place, on or after the applicable Retroactive Date stated in Item 7. of the Declarations and results in:

    a.    the destruction, deletion or corruption of electronic data on **Computer Systems**;

    b.    **Theft of Data** from **Computer Systems**; or

    c.    denial of service attacks against Internet sites or computers; or

3.    the failure to prevent transmission of **Malicious Code** from **Computer Systems** to third party computers and systems and first takes place, on or after the applicable Retroactive Date stated in Item 7. of the Declarations.

except as excluded or limited by the terms, conditions and exclusions of this Policy.

**F.    MULTIMEDIA AND ADVERTISING**

The **Insurer** shall pay on behalf of the **Insured** all **Damages** and **Claims Expenses** by reason of liability imposed by law resulting from any **Claim** first made against the **Insured** as a result of one or more of the following acts in the course of providing **Professional Services**, **Media Activities** or **Technology Services** and first takes place, on or after the applicable Retroactive Date stated in Item 6. of the Declarations:

1.    defamation, libel, slander, product disparagement, trade libel, prima facie tort, infliction of emotional distress, outrage, outrageous conduct, or other tort related to disparagement or harm to the reputation or character of any person or organization;

2.    misappropriation of any name or likeness for commercial advantage;

3.    false arrest, detention or imprisonment or malicious prosecution;

4.    invasion of or interference with any right to private occupancy, including trespass, wrongful entry, eviction or eavesdropping;

5.    plagiarism, piracy or misappropriation of ideas under implied contract;

6.    infringement of copyright;

7.    infringement of trade dress, domain name, title or slogan, or the dilution or infringement of trademark or service mark; or

8. negligence regarding the content of any **Media Communication**, including harm caused through any reliance or failure to rely upon such content;

except as excluded or limited by the terms, conditions and exclusions of this Policy.

G.   **PRIVACY**

1.   The **Insurer** shall pay on behalf of the **Insured** all **Damages** and **Claims Expenses** by reason of a **Claim** first made against the **Insured** arising out of any:

a.   **Privacy Breach** or the breach of **Privacy Regulations** by the **Insured** or a person, including an independent contractor acting on the **Insured's** behalf and for whom the **Insured** is legally responsible and first takes place, on or after the applicable Retroactive Date stated in Item 7. of the Declarations;

b.   **Employee Privacy Breach** which first takes place, on or after the applicable Retroactive Date stated in Item 7. of the Declarations.

2.   The **Insurer** shall pay on behalf of the **Insured Privacy Breach Expenses**, which are reasonable and necessary to pay as a result of a **Privacy Breach, Employee Privacy Breach** or breach of **Privacy Regulations** first identified by the **Insured**;

except as excluded or limited by the terms, conditions and exclusions of this Policy.

2.   **SUPPLEMENTARY PAYMENTS**

Subject to the provisions of this Policy, all payments in Section 2. Supplementary Payments shall be in addition to, and not part of, the Limits of Liability stated in Item 4. of the Declarations.  Unless otherwise specified, no **Deductible** shall apply to Supplementary Payments.

A.   **Pre Claims Assistance for Circumstances**

In accordance with Section 9.B. Notice of Circumstances, the **Insurer**, at its sole discretion, may elect to investigate or monitor any circumstance.  Any such costs or expenses the **Insurer** incurs as a result of investigating or monitoring such circumstances will be paid for by the **Insurer** and will not be considered **Claim Expenses**.

B.   **Attendance at Mediation, Arbitration or Trial Proceedings**

The **Insurer** will reimburse the **Named Insured**, upon written request, for actual loss of earnings as a result of being required by the **Insurer** to attend mediation meetings, arbitration proceedings, hearings, depositions and trials relative to the defense of a **Claim**. The **Insurer** will pay up to $500 for each full day in the aggregate for all **Insureds**, subject to a maximum amount of $10,000 for each **Claim**.

C.   **ADA, FHA, OSHA Regulatory / Administrative Actions Reimbursement**

1.   The **Insurer** will reimburse the **Insured**, upon written request, for legal fees and expenses up to $35,000 in the aggregate for the **Policy Period**, incurred by the **Insured** with the prior written consent of the **Insurer**, in responding to a regulatory or administrative action brought directly against the **Insured** during the **Policy Period** by a government agency under the Americans with Disabilities Act of 1990 (ADA), the Fair Housing (FHA) or the Occupational Safety and Health Act (OSHA) provided that the regulatory or administrative action arises out of the rendering of or failure to render **Professional Services** and is reported to the **Insurer** during the **Policy Period**.

2. After the **Insurer** has paid $35,000 under this Clause in the aggregate for the **Policy Period**, the **Insurer** shall not be obligated to pay any further legal fees and expenses as described in item 1. above.

**D.    Disciplinary Proceedings Reimbursement**

1. The **Insurer** will reimburse the **Insured**, upon written request, for legal fees and expenses up to $35,000 in the aggregate for the **Policy Period**, incurred by the **Insured** with the prior written consent of the **Insurer**, in responding to a disciplinary proceeding brought directly against the **Insured** during the **Policy Period** provided that the disciplinary proceeding arises out of the rendering of or failure to render **Professional Services** and is reported to the **Insurer** during the **Policy Period**.

2. After the **Insurer** has paid $35,000 under this Clause in the aggregate for the **Policy Period**, the **Insurer** shall not be obligated to pay any further legal fees and expenses as described in item 1. above.

**3.    DEFENSE AND SETTLEMENT**

**A.**    The **Insurer** shall have the right and duty to defend, subject to the Limit of Liability listed in Item 4. Of the Declarations and **Deductible**, a **Claim** against the **Insured** for which coverage is provided under this Policy, even if any of the allegations of the **Claim** are groundless, false or fraudulent.

**B.**    The **Insurer** shall not be obligated to pay any **Damages** or **Claims Expenses** or to undertake or continue the defense of a **Claim** after the applicable Limit of Liability has been exhausted by payment of **Damages** or **Claims Expenses**, or after deposit of any remaining Policy Limit in a court of competent jurisdiction and that upon such payment, the **Insurer** shall have the right to withdraw from the further defense thereof by tendering the control of said defense to the **Named Insured**.

**C.**    The Limits of Liability available to pay **Damages** shall be reduced and may be completely exhausted by payment of **Claims Expenses**.

**D.**    The **Insurer** shall not settle any **Claim** without the consent of the **Named Insured**.  The consent of the **Named Insured** shall be binding upon all **Insureds**.  If, however, the **Named Insured** shall refuse to consent to any settlement or compromise of a **Claim** recommended by the **Insurer** and acceptable to the claimant and elects to continue to contest such **Claim**, the **Insurer's** liability for any **Damages** and **Claims Expenses** shall not exceed the amount for which the **Claim** could have been settled including the **Claims Expenses** incurred up to the time of such refusal, or the applicable Limit of Liability whichever is less and the **Insurer** shall have the right to withdraw from any further defense.  If the **Insurer** exercises their option to withdraw from such further defense, the **Insured** shall cooperate fully in the withdrawal of the defense.  The portion of any proposed settlement or compromise that requires the **Insured** to cease, limit or refrain from actual or alleged infringing or otherwise injurious activity or is attributable to future royalties or other amounts that are not **Damages** shall not be considered in determining the amount for which a **Claim** could have been settled.

**E.**    The **Insurer** shall have the right to make any investigation they deem necessary including, without limitation, any investigation with respect to coverage, the Application, statements made in the Application and any supplemental materials submitted therewith.  The **Insured** shall submit for examination by a representative of the **Insurer**, under oath, if requested, in connection with all matters relating to this Policy.

F.   Under Section 1. Insuring Agreement C., the **Insurer** shall have the right, but not the duty, to participate in decisions regarding **Clean-up Costs** and to assume direct control over all aspects of the clean up and the adjustment of any **Claim** up to the Limit of Liability. In the case of the exercise of this right, the **Named Insured**, on demand of the **Insurer**, shall promptly reimburse the **Insurer** for any element of loss falling within the **Deductible**.

## 4.   LIMIT OF LIABILITY

A.   The Limit of Liability stated in Item 4.A. of the Declarations is the limit of **Insurer's** liability for all **Damages** and **Claims Expenses** arising out of each **Claim**.

B.   The Limit of Liability stated in Item 4.B. of the Declarations is the combined total limit of the **Insurer's** liability for all **Damages** and **Claims Expenses** arising out of all **Claims** or circumstances which might lead to a **Claim**.

C.   There is no separate limit of liability for the **Extended Reporting Period**.

D.   For all purposes under this Policy, two or more **Claims** arising out of a single or related series of negligent acts, errors, or omissions or arising out of the same covered event shall be considered a single **Claim**, irrespective of the number of claimants and/or the number of negligent acts, errors or omissions or covered events. All **Claims** arising out of a single or related series of negligent acts, errors or omissions or covered events shall be deemed to have been made at the time of the first **Claim**.

## 5.   DEDUCTIBLE

A.   The **Deductible** shall apply separately to each and every **Claim** and shall apply to **Damages** and **Claims Expenses**, separately or in combination.  Subject to the Limits of Liability stated in Item 4. of the Declarations, the obligation of the **Insurer** to pay on behalf of the **Insured** for **Damages** and **Claims Expenses** separately or in combination shall only be excess of the **Deductible**. The **Insured** must pay the **Deductible** for each **Claim** before the **Insurer** is obligated to make any payment under this Policy for that **Claim**.

B.   If the **Insured** and the **Insurer** agree to use **Mediation** and the **Claim** is fully and finally resolved through the use of **Mediation** prior to the commencement of any litigation or arbitration proceedings against the **Insured**, the **Deductible** shall be reduced by fifty percent (50%) up to $25,000 for such **Claim**.

## 6.   TERRITORY

The insurance afforded by this Policy applies worldwide.  Where **Claims** are made outside of the United States of America and its territories and possessions, Puerto Rico, or Canada, the following additional provisions apply:

A.   The **Insurer** shall have the right but not the duty to investigate, defend or settle any such **Claims** brought against the **Insurer**;

B.   If the **Insurer** elects not to investigate, defend or settle any such **Claim**, the **Insured** shall, under the **Insurer's** supervision, arrange for such investigation and defense thereof as is reasonably necessary and subject to the **Insurer's** prior authorization, shall effect such settlement thereof as the **Insurer** and the **Insured** deem expedient;

C.   The **Insurer** will reimburse the **Insured** for the reasonable cost of such investigation and defense and the amount of any settlement or judgment in excess of the applicable

**Deductible** amounts stated in Item 5. of the Declarations, all subject to and within the Limits of Liability stated in Item 4 of the Declarations; and

D.   Such reimbursement shall be made in United States currency at the rate of exchange prevailing on the date the judgment is rendered or the date that the amount of the settlement is agreed upon or the date an expenditure is made.

7.   **EXCLUSIONS**

A.   **EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS:**

This Policy shall not apply to **Damages** or **Claims Expenses** resulting from any **Claim**:

1.   arising out of any fact or circumstance in respect of which any **Insured**, prior to the commencement of this Policy, has given notice to any other insurer of any other policy;

2.   arising out of any fact or circumstance known to the **Insured** prior to the commencement of this Policy if such fact or circumstance could reasonably have been foreseen to give rise to a **Claim** against the **Insured**;

3.   arising out of any fraudulent, criminal, malicious dishonest intentional, wilful or knowing acts, errors or omissions of any **Insured**; provided this exclusion does not apply to **Claims Expenses** incurred in defending any such **Claim** alleging the foregoing but only until such time there is a final adjudication, binding arbitration decision or conviction against an **Insured** or an admission by an **Insured** that establishes fraudulent, criminal, malicious, dishonest intentional, wilful or knowing conduct, or a plea of *nolo contendere* or no contest regarding such conduct;

4.   arising out of any **Insured** acting in his capacity as a principal, director and /or officer of any entity other than the **Named Insured**;

5.   by or on behalf of one or more **Insureds** under this Policy against any other **Insured** or **Insureds** under this Policy; provided this exclusion shall not apply to a **Claim**:

   a.   by or on behalf of any client of the **Named Insured** who is an **Insured**; or

   b.   arising out of an **Employee Privacy Breach** under Section 1. Insuring Agreement G.;

6.   arising out of any actual or alleged personal injury, bodily injury, emotional distress, sickness, disease or death to any employee of the **Insured** arising out of and in the course of employment by the **Insured**; or any obligation which the **Insured** or any insurer may be liable under any worker's compensation, unemployment compensation, employers liability, disability benefits law or under any similar laws; provided this exclusion shall not apply with respect to Section 1. Insuring Agreements F. and G.;

7.   arising out of any actual or alleged:

   a.   wrongful termination or constructive termination of an employment relationship, denial of a promotion, or demotion, sexual harassment by unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a physical nature that explicitly or implicitly are made a condition of employment, are used as a basis for employment decisions, or create a work environment

that interferes with performance or is intimidating, hostile or offensive by the **Insured** against a past or present employee, officer or applicant for employment; or

    **b.**    unlawful discrimination, humiliation or harassment because of race, color, religion, age, sex, disability, pregnancy, sexual orientation, national origin, or any other basis prohibited by federal, state or local law; provided that this exclusion shall not apply to any **Claim** based on the Americans with Disabilities Act of 1990 (ADA), as amended, or the Fair Housing Act (FHA) or any state or local versions of those acts, and arising out of the **Insured's** rendering or failure to render **Professional Services**;

**8.**    arising out of or resulting from:

    **a.**    breach of any express warranty or guarantee; provided this exclusion shall not apply to a warranty or guarantee to perform **Professional Services** in conformance with the applicable standard of care; or

    **b.**    any liability assumed under any contract or agreement including any breach of express warranty or guarantee, or any hold harmless or indemnity agreements, provided this exclusion shall not apply to the extent the **Insured** would have been liable in the absence of such contract or agreement;

**9.**    arising out of the design or manufacture of any goods or products for multiple sales or mass distribution which are sold or supplied by the **Insured** or by others under license from the **Insured**; provided, that this exclusion shall not apply to any **Claim** which is covered pursuant to Section 1. Insuring Agreement, D.2.;

**10.**    arising out of any infringement of patent or patent rights or misuse of patents;

**11.**    arising out of **Professional Services**, **Contracting Services**, **Media Activities** or **Technology Services** performed for any entity, or **Technology Products** provided to any entity:

    **a.**    which is operated, managed or controlled by any **Insured**;

    **b.**    in which any **Insured** has an ownership interest in excess of forty-nine percent (49%);

    **c.**    in which any **Insured** is an officer or director; or

    **d.**    which wholly or partly owns, operates, controls or manages the **Insured**, unless such **Claim** emanates originally from an independent third party;

provided this exclusion does not apply to legal liability that arises out of a negligent act, error or omission in the performance of the **Insured's Professional Services** as part of a **Joint Venture**;

**12.**    arising out of the insolvency or bankruptcy of any **Insured**;

**13.**    arising out of nuclear reaction, radiation or contamination under any circumstances and regardless of cause, within or originating from any site where a nuclear reactor is located or where nuclear waste or material is disposed.

**B.    EXCLUSIONS APPLICABLE TO INSURING AGREEMENTS B AND C:**

This Policy shall not apply to **Damages** or **Claims Expenses** resulting from any **Claim** involving:

**1.**    the actual or alleged generation, transportation, storage or disposal of Pollutants by the Insured, or by any person for whom the Insured is legally responsible, beyond a contract site or the arranging of transportation, storage or disposal of Pollutants;

**2.**    Pollution at, onto, or from property or facilities which are or were at any time owned, leased or rented by the Insured or by any person for whom the Insured is legally responsible; and

**3.**    Pollution arising from the ownership, entrustment, maintenance, operation or use of any watercraft, aircraft, motor vehicle or rolling stock of any kind; provided this exclusion shall not apply to the loading or unloading of any watercraft, aircraft, motor vehicle, or rolling stock of any kind owned, entrusted to, maintained or operated by the Insured, or by any person for whom the Insured is legally responsible, while on a job site.

**C.    EXCLUSIONS APPLICABLE TO INSURING AGREEMENTS D, E, F AND G:**

This Policy shall not apply to **Damages** or **Claims Expenses** resulting from any **Claim**:

**1.**    either in whole or in part, directly or indirectly, based upon or relating to bodily injury, personal injury, sickness, disease, or death of any person, including mental anguish arising therefrom, or to damage to or destruction of any tangible property, including loss of use thereof. However this exclusion shall not apply to data, information or software, if the tangible property on which it resides is not physically damaged, lost or destroyed;

**2.**    either in whole or in part, directly or indirectly, based upon or relating to the **Insured's** obligation to:

    **a.**    pay licensing fees, royalty payments or future profits; or

    **b.**    restitution, disgorgement of profits, or the costs of complying with orders granting injunctive or equitable relief;

**3.**    either in whole or in part, directly or indirectly, based upon costs or expenses incurred or to be incurred by the **Insured** or others for:

    **a.**    the reprinting, recall, removal or disposal of any **Media Material**, including any media or products containing such **Media Material**; or

    **b.**    the withdrawal, recall, inspection, repair, replacement, reproduction, removal or disposal of:

        **i.**    **Technology Products**, including any products or other property of others that incorporate **Technology Products**;

        **ii.**    work product resulting from or incorporating the results of **Technology Services**; or

        **iii.**    any products or other property on which **Technology Services** are performed;

provided, this exclusion shall not apply to **Claims** for the resulting loss of use of such **Media Material** or **Technology Products**, or loss of use of the work product resulting from such **Technology Services**.

**4.**    arising out of or resulting from:

    **a.**    the failure of **Computer Systems** to be protected by security practices and procedures equal to or superior to those disclosed in response to questions in the application relating to **Computer Systems** security, including access protection, intrusion detection, data back-up procedures, **Malicious Code** protection, and data encryption procedures; or

    **b.**    the failure to install available software product updates and releases, or to apply security related software patches, to computers and other components of **Computer Systems**;

**5.**    for or arising out of actual or alleged infringement of copyright arising out of or related to **Technology Products**;

**6.**    for or arising out of actual or alleged misappropriation of trade secret.

**7.**    arising out of or resulting from:

    **a.**    inaccurate, inadequate or incomplete description of the price of goods, products or services;

    **b.**    cost guarantee, cost representations, contract price or estimates of probable costs or cost estimates being exceeded;

    **c.**    the failure of goods, products, or services to conform with any represented quality or performance contained in **Advertising**; or

    **d.**    any actual or alleged gambling, contest, lottery, promotional game or other game of chance;

**8.**    either in whole or in part, directly or indirectly, relating to the existence, emission or discharge of any electromagnetic field, electromagnetic radiation or electromagnetism that actually or allegedly affects the health, safety or condition of any person or the environment, or that affects the value, marketability, condition or use of any property;

**9.**    either in whole or in part, directly or indirectly, relating to any action brought by or on behalf of the Federal Trade Commission (FTC), Federal Communications Commission (FCC) or any other federal or local government agency, in such entity's regulatory or official capacity;

**10.**    either in whole or in part, directly or indirectly relating to any actual or alleged electrical or mechanical failure and or interruption, including but not limited to an electrical disturbance, surge, spike, brownout or blackout;

**11.**    either in whole or in part, directly or indirectly, relating to wear or tear, latent or time delayed **Damages** arising from services provided, gradual deterioration or the

**Insured's** failure to maintain any computer, computer system or network, computer software or any other equipment;

12. either in whole or in part, directly or indirectly, relating to any withdrawal or recall of electronic products or systems or of work compiled by the **Insured** or on their behalf or any property of which such products forms a part; provided this exclusion shall not apply to **Claims** by third parties caused solely by "Loss of Use" as a result of the provision of **Technology Services** by the **Insured**.  For purposes of this exclusion, "Loss of Use" means the inability to use or access such electronic products, systems, work or property resulting from the withdrawal or recall of such products, systems, work or property.

## 8.   DEFINITIONS

A.   **"Advertising"** means material or content which promote the product, service or business of the **Named Insured** or others.

B.   **"Claim"** shall mean a demand received by any **Insured** for money or services as a matter of right, including:

1. the service of suit or institution of arbitration proceeding or other alternative dispute resolution requests; and

2. a threat or initiation of a suit seeking injunctive relief (meaning temporary restraining order or permanent injunction).

C.   **"Claims Expenses"** shall mean:

a. those fees, costs and expenses incurred by an attorney appointed to represent the **Insured** in the defense and investigation of any **Claim** and all other costs, charges and expenses incurred by the **Insurer**, or by the **Insured** with the prior written consent of the **Insurer** for the investigation, adjustment, settlement, arbitration, mediation, defense or appeal of any **Claim**; and

b. premiums for appeal bonds for covered judgments or bonds to release property used to secure legal obligations, if required for a **Claim** against any **Insured** for a covered act, error or omission; provided the **Insurer** shall have no obligation to apply for or to obtain such bonds.

**Claims Expenses** do not include salaries, overhead or other internal expenses, including travel charges, incurred by the **Insured** for time spent in cooperating in the defense and investigation of any **Claim** and no such expenses or charges shall apply to the **Deductible**.

D.   **"Clean-up Costs"** means those expenses incurred with the **Insurer's** written consent in the removal or remediation of contamination, including the associated monitoring, or disposal of soil, surface water or groundwater:

1. specifically mandated by court order or any government entity duly acting under the authority of environmental laws;

2. specifically demanded by a third party in a **Claim**;

3. actually incurred by a government entity or third party; or

4. mutually agreed upon by the **Insurer** and the **Insured** to mitigate potential loss.

E.   **"Computer Systems"** means computers and associated input and output devices, data storage devices, networking equipment, and back up facilities:

   **1.**   operated by and either owned by or leased to the **Named Insured**; or

   **2.**   operated by a third party service provider and used for the purpose of providing hosted computer application services to the **Named Insured** or for processing, maintaining, hosting or storing the **Named Insured's** electronic data, pursuant to written contract with the **Named Insured** for such services.

F.   **"Contracting Services"** shall mean those services provided by the **Insured** or by any person for whom the **Insured** is legally responsible as a construction contractor.

G.   **"Damages"** shall mean the monetary amounts for which the **Insured** is legally liable, including:

   **1.**   judgments, awards or settlements; and

   **2.**   punitive, multiple or exemplary damages where insurable by law, including any pre- or post-judgement interest thereon.  The inclusion of any pre- or post-judgement interest shall not increase the **Insurer's** obligations under the Limit of Liability as set forth in the Declarations.

   **Damages** shall not include:

   **1.**   liquidated damages provision in any written agreement except to the extent the **Insured** would have been held liable in the absence of such written agreement; and

   **2.**   sanctions, fines, penalties assessed against the **Insured**.

H.   **"Deductible"** means the amount stated in Item 5. of the Declarations.

I.   **"Employee Privacy Breach"** means **Privacy Breach** or the breach of **Privacy Regulations** by the **Insured** or a person, including an independent contractor, acting on the **Insured's** behalf and for whom the **Insured** are responsible, harming any employee or employees of the **Named Insured**.

J.   **"Extended Reporting Period"** means the period after the end of the **Policy Period** for reporting **Claims** as provided for in Section 10. Extended Reporting Period..

K.   **"Insured"** means:

   **1.**   the **Named Insured** and any subsidiary;

   **2.**   any present principal, partner, director, officer, member, shareholder, trustee, employee or **Temporary Employee** of the **Named Insured** but only while acting in his capacity as such on behalf of the **Named Insured**;

   **3.**   a former or retired principal, partner, director, officer, member, shareholder, trustee, employee or **Temporary Employee**, but only while acting in his capacity as such on behalf of the **Named Insured** during the period of service with the **Named Insured**;

   **4.**   the estate, legal heir, executor, administrator, or legal representative of an **Insured** in the event of an **Insured's** death, incapacity, insolvency or bankruptcy but only in respect of the **Insured** acting in his capacity as a principal, partner, director, officer or

employee on behalf of the **Named Insured** during his period of service with the **Named Insured**;

5.      a spouse or legally recognized domestic partner of any **Insured**, but only for **Claims** arising out of their status as such, including where such **Claim** seeks an award or damages from marital community property, jointly held property, or property transferred from an **Insured** to their spouse or legally recognized domestic partner;

6.      a **Joint Venture** in which the **Named Insured** participates as a co-venturer but only with respect to the liability imposed on the **Named Insured** for its participation in such joint venture arising out of any negligent act, error or omission in rendering or failing to render **Professional Services** or **Technology Services**, or as a result of **Pollution** at a job site arising out of the performance of **Contracting Services**, all as more fully described in Section 1. Insuring Agreements A, B, C or D. This definition does not extend coverage, and no coverage will be provided, for **Damages** or **Claims Expenses** to the **Joint Venture** itself or any other entity or individual that is part of the **Joint Venture**;

7.      Solely with respect to Section 1. Insuring Agreement C. Contractors Pollution Liability, the client for whom the **Insured** performs or performed **Contracting Services** is an additional **Insured**, provided that a written contract or agreement is in effect between the **Named Insured** and the client requiring the client to be an additional **Insured** under the **Named Insured's** architects, engineers and contractors pollution liability Policy. However, such clients are covered under the Section 1. Insuring Agreement C of the Insuring Agreements solely with respect to **Claims** and **Claims Expenses** arising from **Contracting Services** performed by any other **Insured** and are not covered for any **Claims** and **Claims Expenses** arising from the said clients' own acts, errors or omissions. Clients of the **Named Insured** are covered under Section 1. Insuring Agreement C. only up to but not exceeding the Limits of Liability required by the written contract or agreement and subject always to the to the Limits of Liability of this Policy; or

8.      a former or retired director, officer, principal, partner, member or employee while acting within their duties as a consultant for 1 and 6 above.

L.      "**Joint Venture**" means a business endeavor, confirmed in a written agreement, between the **Named Insured** and one or more entities or individuals in which the **Named Insured's** participation is the performance of **Professional Services**, **Technology Services**, or **Contracting Services.**

M.      "**Malicious Code**" means any virus, Trojan Horse, worm or other similar software program, code or script intentionally designed to insert itself into computer memory or onto a computer disk and spread itself from one computer to another.

N.      "**Media Activities**" means **Media Communication** and/or the gathering, collection or recording of **Media Material** for inclusion in any **Media Communication** in the ordinary course of the **Named Insured's** business.

O.      "**Media Communication**" means the display, broadcast, dissemination, distribution or release of **Media Material** to the public by the **Named Insured.**

P.      "**Media Material**" means information in the form of words, sounds, numbers, images, or graphics in electronic, print or broadcast form, including **Advertising**, but does not mean computer software.

Q.  **"Mediation"** shall mean the voluntary and otherwise non-binding process by which a qualified professional mediator mutually agreed upon by the parties with the intention to reconcile them to resolve a **Claim**. **Mediation** shall not include or mean other dispute resolution after the commencement of litigation or arbitration against the **Insured**.

R.  **"Named Insured"** means only those persons, partnerships, corporations or entities specified in Item 1 of the Declarations. **Named Insured** shall not include any partnerships, corporations or entities formed or acquired by the **Named Insured** subsequent to the inception date of this Policy except as provided for in Section 12. Mergers and Acquisitions.

S.  **"Newsworthy Event"** means a **Privacy Breach** or breach of **Privacy Regulations** event that has been caused by a **Claim** or a circumstance that might reasonably lead to a **Claim** that has been publicized through any media channel, including television, print media, radio or electronic networks, the Internet, and/or electronic mail.

T.  **"Policy Period"** means the period of time between the inception date shown in Item 2. of the Declarations and the effective date of termination, expiration or cancellation of this Policy and specifically excludes any **Extended Reporting Period**.

U.  **"Pollutants"** mean any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, mold, spores, fungi, microbes, bacteria, legionella pneumophila and waste. Waste includes, but not limited to, materials to be recycled, reconditioned or reclaimed.

V.  **"Pollution"** means the discharge, dispersal, release or escape of **Pollutants** which results in bodily injury, property damage and/or **Clean-up Costs**.

W.  **"Privacy Breach"** means a common law breach of confidence, infringement, or violation of any rights to privacy, including but not limited to breach of the **Insured's** privacy statement, breach of a person's right of publicity, false light, intrusion upon a person's seclusion, public disclosure of a person's privacy information, or misappropriation of a person's picture or name for commercial gain.

X.  **"Privacy Breach Expenses"** means:

1.  any fees reasonably incurred by any **Insured** with the **Insurer's** prior written consent for the employment of a public relations consultancy if the **Insured** reasonably consider that action is needed in order to avert or mitigate any material damage to any of their brands that constitutes a **Newsworthy Event** that has arisen due to a **Claim.**

2.  those reasonable and necessary legal expenses, public relations expenses, postage expenses, and related advertising expenses incurred by the **Insured** in order to comply with any applicable governmental privacy legislation mandating customer notification in the event of a **Privacy Breach** or breach of **Privacy Regulations** or in the event of a security breach that results in the compromise or potential compromise of personal information maintained or otherwise residing on computer systems operated by or on behalf of the **Named Insured**.

3.  those reasonable expenses incurred with the Insurer's prior written consent for the provision of customer support activity including the provision of credit file monitoring services and identity theft education and assistance in the event of a **Privacy Breach** or breach of **Privacy Regulations** or in the event of a **Privacy Breach** that results in the compromise or potential compromise of personal information maintained or otherwise residing on computer systems operated by or on behalf of the **Named Insured**;

4. those reasonable and necessary computer forensic costs of outside experts retained by the **Insurer** to determine the scope, cause, or extent of any theft or unauthorized disclosure of information. Such expenses will not include compensation, fees, benefits, or the expenses of any **Insured**;

5. fees charged by a lawyer(s) designated by the **Insurer** to defend any breach of **Privacy Regulations;**

6. all other reasonable fees, costs and expenses resulting from investigation, adjustment, defense and appeal of a breach of **Privacy Regulations**, suit or proceeding arising in connection therewith, if incurred by the **Insurer**, or with their written consent;

7. penalties or sanctions imposed by a federal, state, or local regulatory body against any **Insured** as a result of a **Privacy Breach** or breach of **Privacy Regulations.**

   **Privacy Breach Expenses** do not include any salaries, overhead or other charges incurred by any **Insured** for any time spent in cooperating in the defense and investigation of any **Claim** or circumstance which might lead to a **Claim.**

Y. **"Privacy Regulations"** mean the following statutes and regulations associated with the control and use of personally identifiable financial or medical information:

1. Health Insurance Portability and Accountability Act of 1996 (Public law 104-191), known as HIPAA, including Title II that requires protection of confidentiality and security of electronic protected health information and the rules and regulations promulgated thereunder as they currently exist and as amended, including related state medical privacy laws as they currently exist and as amended;

2. Gramm-Leach-Bliley Act of 1999 also known as the Financial Services Modernization Act of 1999, including sections concerning security protection and standards for customer records maintained by financial services companies, and the rules and regulations promulgated thereunder as they currently exist and as amended;

3. State Attorneys General and Federal Trade Commission enforcement actions regarding the security and privacy consumer information;

4. Governmental privacy protection regulations or laws, such as California Database Protection Act of 2003 as they exist now or in the future, in the United States or Canada only, associated with the control and use of personal information, including but not limited to requirements to post privacy policies, adopt specific privacy controls, or inform customers of breaches of security that has or may impact their personal information; and

5. Federal and state consumer credit reporting laws, such as the Federal Fair Credit Reporting Act (FCRA) and the California Consumer Credit Reporting Agencies Act (CCCRAA).

Z. **"Professional Services"** means those services provided by the **Insured** or by any person for whom the **Insured** is legally responsible acting in the capacity of an architect, engineer, landscape architect, land surveyor, interior designer, construction manager, technical consultant, environmental consultant, including **Sustainability** of any such service or as specifically endorsed hereon.

**AA.**   **"Sustainability"** means taking into consideration environmentally responsible design alternatives consistent with a clients program, schedule, and budget as a Leadership in Energy & Environmental Design (LEED®) accredited professional or Green Globes® certified professional or any other design professional society recognized accrediting organization.

**BB.**   **"Technology Services"** means computer and electronic technology services, electronic media activities, data processing, digital services, internet services, data and application hosting, computer systems analysis, technology consulting and training, custom software programming, computer software systems and integration, computer and software support, network management services, information services and/or other electronic activities which are performed only by the **Named Insured**, or by others acting under the **Named Insured's** trade name but shall not include **Technology Products**.

**CC.**   **"Technology Products"** means a computer or telecommunications hardware or software product, or related electronic product that is created, manufactured or developed by the **Named Insured** for others, or distributed, licensed, leased or sold by the **Named Insured** to others, for compensation, including software updates, service packs and other maintenance releases provided for such products.

**DD.**   **"Temporary Employee"** means any natural person leased, hired or borrowed by the **Named Insured** to meet short term or project specific workloads and for whom the **Named Insured** has the right to direct and control the means of performance.

**EE.**   **"Theft of Data"** means the unauthorized taking, misuse or disclosure of information on **Computer Systems**, including but not limited to charge, debit, and credit card information, banking, financial, and investment services account information, proprietary information, and personal, private, and confidential information.

**FF.**   **"Unauthorized Access"** means:

1.   the use of or access to **Computer Systems** by a person not authorized to do so by the **Named Insured**; or

2.   the authorized use of or access to **Computer Systems** in a manner not authorized by the **Named Insured**.

## 9.   NOTICE

### A.   NOTICE OF CLAIMS

1.   If any **Claim** is made against the **Insured**, whether or not the alleged **Damages** fall within or in excess of the **Deductible**, the **Insured** shall have the duty to give prompt written notice of such **Claim** to the **Insurer**, but in no event later than thirty (30) days after the expiration of the **Policy Period** where such **Claim** was first brought against the **Insured** during the **Policy Period**.

2.   Any written notice of **Claim** reported to the **Insurer** within thirty (30) days of the end of the **Policy Period** where such **Claim** was first brought against the **Insured** during the **Policy Period** will be deemed first made during the **Policy Period**.

3.   Such written notice must contain details of the **Claim** including the exact date the **Claim** was first made, the location, the circumstances giving rise to the **Claim**, the identity of the claimants and a full description of the nature and scope of the alleged

**Damages.**   The **Insured** shall as soon as reasonably practicable forward every demand, notice, summons or other process received by the **Insured** or **Insurer**.

**B.**   **NOTICE OF CIRCUMSTANCES**

    **1.**   If the **Insured** becomes aware of any circumstance or **Privacy Breach** which may reasonably be expected to give rise to a **Claim**, the **Insured** shall, as soon as practicable and prior to the expiration of the Policy, give written notice to the **Insurer** of:

        **a.**   the specific circumstance;

        **b.**   the injury or damage which has or may result from such circumstance; and

        **c.**   the circumstance by which the **Insured** first became aware of such circumstance.

    **2.**   If the **Insured** complies with the foregoing notice requirements any **Claim** subsequently made against the **Insured** arising out of such circumstance shall be treated as a **Claim** first made on the date on which written notice was received by Underwriter's Representatives.

**10.**   **EXTENDED REPORTING PERIOD**

    **A.**   Automatic Extended Reporting Period

    If the **Insurer** or the **Named Insured** terminate or non-renew this insurance for any reason, other than non-payment of premium, the **Insured's** failure to comply with any term and condition, fraud or material misrepresentation, the **Named Insured** shall be entitled to a period of sixty (60) days from the date of Policy termination to report **Claims** which are made against the **Insured** prior to such termination date and that arise out of the **Insured's** providing or failure to have provided **Professional Services** prior to such termination date. This Automatic **Extended Reporting Period** may not be cancelled by the **Insurer** and does not require the payment of an additional premium. This Automatic **Extended Reporting Period** shall be included within the Optional **Extended Reporting Period** if such is purchased.

    **B.**   Optional Extended Reporting Period

    **1.**   In the event the **Insurer** or the **Named Insured** cancel or refuses to renew this Policy, the **Named Insured** shall have the right, upon payment in full of an additional premium, to have issued an endorsement providing an Optional **Extended Reporting Period** as per the below schedule for **Claims** first made against any **Insured** and reported to the **Insurer** during the Optional **Extended Reporting Period**, and arising out of

        **a.**   any negligent act, error or omission with respect to Insuring Agreements A, B and

        **b.**   **Pollution** at a job site with respect to Insuring Agreement C

        **c.**   any negligent act, error or omission or breach of contract with respect to Insuring Agreement D

        **d.**   any of the acts listed in Insuring Agreement F

e.   any **Privacy Breach**, breach of **Privacy Regulations** or **Employee Privacy Breach** with respect to Insuring Agreement G

committed on or after the applicable Retroactive Date set forth in Item 7. of the Declarations and before the end of the Policy Period, subject to the conditions set forth herein.

| Extended Reporting Period | Percentage of the Annualized Premium |
|---|---|
| 12 months | 100% |
| 24 months | 150% |
| 36 months | 200% |
| 60 months | 250% |

2.   In order for the **Named Insured** to elect the Optional **Extended Reporting Period**:

a.   notice of intent to purchase must be received by the **Insurer** within thirty (30) days of the non-renewal or cancellation; and

b.   the payment of the additional premium for the Optional **Extended Reporting Period** must be received by the **Insurer** within thirty (30) days of the non-renewal or cancellation.

c.   The Limit of Liability for the Optional **Extended Reporting Period** shall be part of, and not in addition to, the Limit of Liability of the **Insurer** for the **Policy Period**.

d.   The quotation by the **Insurer** of a different premium or deductible or limit of liability or changes in policy language for the purposes of renewal shall not constitute a refusal to renew by the **Insurer**.

e.   The right to the Optional **Extended Reporting Period** shall not be available to the **Named Insured** where cancellation or non-renewal by the **Insurer** is due to non-payment or failure of an **Insured** to pay such amounts in excess of the applicable Limit of Liability or within **Deductible**.

f.   All notices with respect to the Optional **Extended Reporting Period** option shall be directed through the **Insurer's Representative** in Item 10. of the Declarations.

g.   At the commencement of the Optional **Extended Reporting Period** the entire premium shall be deemed fully-earned, and in the event the **Named Insured** terminates the Optional **Extended Reporting Period**, for any reason prior to its natural expiration, the **Insurer** will not be liable to return any premium paid for the Optional **Extended Reporting Period**.

## 11.   COOPERATION AND ASSISTANCE OF THE INSURED

A.   The **Insured** shall have the duty to co-operate fully with the **Insurer** and their representatives with respect to the investigation, settlement or defense of any **Claim** or potential **Claim**.

B.   However, except as provided in Section 2.B.  Attendance at Mediation, Arbitration or Trial Proceedings, it is expressly understood that in no event shall the **Insured** be reimbursed for loss of earnings or fees, or for internal expenses or costs incurred in co-operating with the

**Insurer** in investigating or settling any **Claim** or in the **Insured's** defense of any **Claim**, nor shall the **Deductible** apply to any such loss of earnings, fees, costs or expenses.

C.   However, the above condition does not apply to reasonable costs incurred, with the express written consent of the **Insurer**, in securing the co-operation of former principals, partners, officers, directors, members, shareholders, trustees or employees of the **Named Insured** in the defense of a **Claim**.

## 12.   ADMISSION OF LIABILITY

The **Insured** shall not, without the prior written consent of the **Insurer**, incur any expenses, including but not limited to forgoing or reducing any compensation due or alleged to be due, or make any other payment, assume any obligation, settle or offer to settle, attempt any remedial measure or in any way admit or acknowledge liability in connection with any **Claim** or potential **Claim**.

## 13.   NO ACTION AGAINST INSURER

A.   No action shall lie against the **Insurer** or their representatives unless, as a condition precedent thereto, the **Insured** shall have fully complied with all the terms and conditions of this Policy, or until the amount of any **Damages** has been finally determined either by operation of law or by written agreement of the **Insured**, the claimant and the **Insurer**.

B.   Nothing contained in this Policy shall give any person or organization any right to join the **Insurer** as a defendant or co-defendant or other party in any action against the **Insured** to determine the **Insured's** liability.

## 14.   OTHER INSURANCE

This Policy shall apply in excess of:

A.   any other valid and collectible insurance available to any **Insured**, including, but not limited to, any project specific professional liability and/or contractors pollution liability insurance; and

B.   any self insured retention or deductible portion thereof;

unless such other insurance is written only as specific excess insurance over the Limit of Liability of this Policy.

## 15.   CHANGES

None of the Insuring Agreements, Exclusions, Definitions or other terms and conditions of this Policy shall be amended, waived or otherwise changed except by endorsement hereto signed by the **Insurer**.

## 16.   NAMED INSURED AS AGENT

The first **Named Insured** specified in Item 1. of the Declarations shall be considered the agent of all **Insureds** with respect to the giving of or receipt of all notices pertaining to this Policy and shall be responsible for the payment to the **Insurer** of all premiums and for payment of the **Deductible**.

17. **SUBROGATION**

In the event of any **Claim** under this Policy, the **Insurer** shall be subrogated to all of the **Insured's** rights of recovery against any person or entity, and the **Insured** shall execute and deliver to the **Insurer** any and all necessary documentation, instruments and records and do whatever else is necessary to secure and enforce such rights. The **Insured** shall take no action after such **Claim** is made against it which prejudices such rights of **Insurer**.

The **Insurer** agrees to waive their rights of recovery against any client of the **Named Insured** for a **Claim** to the extent the **Named Insured** had, prior to such **Claim**, a written agreement to waive such rights.

18. **ASSIGNMENT**

No assignment or transfer of any **Insured's** rights under this Policy shall bind the **Insurer**. If an **Insured** shall die or be adjudged incompetent, such insurance shall cover that **Insured's** legal representative as an **Insured** as would be permitted by this Policy.

19. **MERGERS AND ACQUISITIONS**

A. **Takeover of Named Insured**

If, during the **Policy Period**:

1. any person or entity or group of persons or entities acting in concert acquires securities resulting in ownership by such person(s) or entity(ies) of more than 50% of the outstanding securities representing the present right to vote for the election of directors or equivalent positions of the **Named Insured**; or

2. the **Named Insured** merges into or consolidates with another organization such that the **Named Insured** is not the surviving organization,

then coverage under this Policy shall continue but only for any, otherwise covered, negligent act, error or omission in rendering or failing to render **Professional Services**, **Contracting Services**, **Technology Services** or **Media Activities** occurring before such transaction. No coverage under this Policy will be available after such transaction unless otherwise specifically endorsed by the **Insurer**. Upon such transaction, the entire premium for this Policy will be deemed fully earned. The **Insureds** will also give the **Insurer** written notice of such transaction as soon as practicable, but not later than 90 days after the effective date of such transaction.

B. **Acquisition or Creation of New Subsidiary**

If, during the **Policy Period**, any **Insured** acquires, creates or merges with another organization such that the **Insured** is the surviving entity, then:

1. such newly acquired, created or merged organization shall be covered under this Policy after the effective date of such transaction; and

2. the **Insureds** will also give the **Insurer** written notice of such transaction as soon as practicable, but not later than 90 days after the effective date of such transaction.

If the revenue of such newly acquired, created or merged organization exceeds 10% of the **Named Insured's** revenue for the most recently completed past 12 months, as set forth in their most recent application for insurance, then:

1.   subject to the expiration of the **Policy Period**, any continuation of coverage for such newly acquired or created organization beyond 90 days after the effective date of such transaction will be subject to any additional terms and conditions, including additional premium, required by the **Insurer**; and

2.   the **Insureds** will furnish all information regarding such transaction as the **Insurer** shall request.

## 20.   CANCELLATION

A.   This Policy may be cancelled by the **Named Insured** by mailing to the **Insurer's Representative** listed in Item 10. of the Declarations a written notice stating when thereafter the cancellation shall be effective.  The **Insurer** may cancel this Policy by mailing to the **Named Insured** at the address shown in Item 1. of the Declarations, a written notice stating when not less than 60 days thereafter such cancellation shall be effective.  However, if the **Insurer** cancels this Policy because the **Insured** has failed to pay a premium when due, this Policy may be cancelled by the **Insurer** by mailing a written notice of cancellation to the **Named Insured** at the address shown in Item 1. Of the Declarations stating when not less than 10 days thereafter such cancellation shall be effective.  The mailing of notice as aforementioned shall be sufficient proof of notice.  The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the **Policy Period**.  Delivery (where permitted by law) of such written notice either by the **Named Insured** or by the **Insurer** shall be equivalent to mailing.

B.   If the **Named Insured** cancels this Policy, the **Insurer** shall retain the customary short rate proportion of the premium.

C.   If the **Insurer** cancels this Policy, earned premium shall be computed pro rata.

D.   Notwithstanding items B. and C. above, the premium shall be deemed fully-earned if any **Claim** or circumstance that might lead to a **Claim** is reported to the **Insurer** under this Policy.

E.   Premium adjustment may be made either at the effective date of cancellation or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

## 21.   WAR AND TERRORISM

A.   Notwithstanding any provision to the contrary within this Policy or any endorsement thereto, it is agreed this Policy excludes **Damages** and **Claims Expenses** directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss:

1.   war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2.   any act of "Terrorism."

B.   For the purpose of this section, an act of "Terrorism" means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the

intention to influence any government and/or to put the public, or any section of the public, in fear.

C.    In the event any portion of this Section 21 is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

## 22.    INNOCENT INSURED

A.    Whenever coverage under this Policy would be excluded or denied:

1.    because of any exclusion relating to criminal, dishonest, fraudulent or malicious acts, errors or omissions by any **Insured**, and with respect to which any other **Insured** did not personally participate or personally acquiesce or remain passive after having personal knowledge thereof, or

2.    because of non-compliance with Section 9. Notice with respect to which any other **Insured** shall be in default solely because of the failure to give such notice or concealment of such failure by one or more **Insured** responsible for the loss or damage otherwise insured hereunder;

the **Insurer** agrees that such coverage as would otherwise be afforded under this Policy shall cover and be paid with respect to those **Insureds** who did not personally commit or personally participate in committing or personally acquiesce in or remain passive after having personal knowledge of (i) one or more of the acts, errors or omissions described in any such exclusion; or (ii) such failure to give notice, provided that if the condition be one with which such **Insured** can comply, after receiving knowledge thereof, the **Insured** entitled to the benefit of this section shall comply with such condition promptly after obtaining knowledge of the failure of any other **Insured** to comply therewith.

B.    With respect to this section, the **Insurer's** obligation to pay in such event shall be in excess of the **Deductible** and in excess of the full extent of any assets of any **Insured** to whom the exclusion applies.



Signature Page

IN WITNESS WHEREOF, Arch Insurance Company has caused this policy to be executed and attested.


John Mentz
President


Patrick K. Nails
Secretary

## Claims Handling Procedures

An important value of your insurance coverage is the ability of the insurance company to respond when you have a claim.  Arch Insurance Company is committed to providing its insureds with effective claim services.

Notices of each incident, claim or suit must be sent immediately to:

Arch Insurance Company
Professional Liability - Darien Managed Claims
1299 Farnam Street, Suite 500
Omaha, NE  68102
P.O. Box 542033
Omaha, NE 68154
Phone 877 688-ARCH (2724)
FAX 866 266-3630
Email Claims@Archinsurance.com

You will be contacted by a representative of the company's Claim Department.  This representative will confirm receipt of the loss notice directly to you, provide a company claim number for all future correspondence, refer to legal counsel if necessary, and discuss further handling of the claim.

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
# ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http://www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CONNECTICUT AMENDATORY ENDORSEMENT

This Endorsement modifies insurance provided under the <u>Architects and Engineers Professional Liability Insurance Policy</u>.

It is agreed that:

Section **20. CANCELLATION** is deleted and replaced by:

> **20.    CANCELLATION AND NONRENEWAL**
>
> **A.** Cancellation
>
> **1.** The **Named Insured** may cancel this Policy by mailing or delivering to the **Insurer** advance written notice of cancellation.
>
> **2.** Cancellation of policies in effect for less than sixty (60) days.
>
> If this Policy has been in effect for less than sixty (60) days and is not a renewal of a Policy the **Insurer** issued, the **Insurer** may cancel this Policy for any reason by giving the **Named Insured** written notice of cancellation at least:
>
> **a.** ten (10) days before the effective date of cancellation if the **Insurer** cancels for nonpayment of premium; or
>
> **b.** thirty (30) days before the effective date of cancellation if the **Insurer** cancels for any other reason.
>
> **3.** Cancellation of policies in effect for sixty (60) days or more.
>
> **a.** If this Policy has been in effect for sixty (60) days or more or this is a renewal of a policy the **Insurer** issued, the **Insurer** may cancel this Policy by giving the **Named Insured** written notice of cancellation at least:
>
> **i.** ten (10) days before the effective date of cancellation if the **Insurer** cancels for one or more of the following reasons:
>
> **(a)** Nonpayment of premium;
>
> **(b)** Conviction of a crime arising out of acts increasing the hazard insured against;
>
> **(c)** Discovery of fraud or material misrepresentation by the **Insured** in obtaining the Policy or in perfecting any claim thereunder;
>
> **(d)** Discovery of any willful or reckless act or omission by the **Insured** increasing the hazard insured against; or
>
> **(e)** A determination by the Commissioner that continuation of the Policy would violate or place the **Insurer** in violation of the law; or

      ii.        sixty (60) days before the effective date of cancellation if the **Insurer** cancels for one or more of the following reasons:

          **(a)** Physical changes in the property which increase the hazard insured against;

          **(b)** A material increase in the hazard insured against; or

          **(c)** A substantial loss of reinsurance by the **Insurer** affecting this particular line of insurance.

   **b.**     The **Insurer** may not cancel policies in effect for sixty (60) days or more or renewal policies for any reason other than the reasons described in Paragraph 3.a. above.

   **c.**     If the **Insurers** cancels for nonpayment of premium, the **Named Insured** may continue the coverage and avoid the effect of the cancellation by payment in full at any time prior to the effective date of cancellation.

   **d.**     Notice of Cancellation will be delivered or sent by:

      **i.**        Registered mail;

      **ii.**       Certified mail; or

      **iii.**     Mail evidenced by a United States Post Office certificate of mailing.

  **4.**  The **Insurer** will give notice to the **Named Insured** at the **Named Insured's** last mailing address known to the **Insurer**.

  **5.**  Notice of cancellation will state the effective date of cancellation. The **Policy Period** will end on that date.

  **6.**  If this Policy is cancelled, the **Insurer** will send the **Named Insured** any premium refund due. If the **Insurer** cancels, the refund will be pro rata. If the **Named Insured** cancels, the refund may be less than pro rata. The cancellation will be effective even if the **Insurer** has not made or offered a refund.

  **7.**  If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.**  Nonrenewal

  **1.**  If the **Insurer** decides not to renew this Policy, the **Insurer** will mail or deliver to the **Named Insured** a written notice of nonrenewal, stating the reason for nonrenewal, at least sixty (60) days before the expiration date of this Policy. The notice will be sent to the **Named Insured's** address last known to the **Insurer**.

  **2.**  This notice will be delivered or sent by:

     **a.**     Registered mail;
     **b.**     Certified mail; or
     **c.**     Mail evidenced by a certificate of mailing.

     If notice is mailed, proof of mailing is sufficient proof of notice.

3. However, the **Insurer** is not required to send this notice if nonrenewal is due to the **Named Insured's** failure to pay any advance premium required for renewal.

4. With respect to automobile liability insurance policies only, the **Named Insured's** Policy shall terminate on the effective date of any other insurance policy the **Named Insured** purchases with respect to any automobile designated in both policies.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 1

Policy Number: PAAEP0010600

Named Insured: Juliano Associates, LLC

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: February 13, 2016

00 AEP0077 07 03 15